DECISION.
Plaintiffs-appellants, Wolfer Enterprises, Inc., a real estate company, and Stephen L. Snider, one of its brokers, filed suit against several entities involved in the sale of an apartment complex called the Remington Place Apartments. Defendant-appellee Forest Park II Limited Partnership owned the property at issue. Defendants-appellees Overbrook Development Corporation and Overbrook/Feinsilver, Inc., were general partners in Forest Park, and defendant-appellee Alan Feinsilver was the president of Overbrook/Feinsilver. We refer to these parties collectively as "Overbrook."
After solicitation by Snider, Feinsilver, on behalf of Overbook, entered into a brokerage agreement with appellants for the sale of Remington Place. Generally, under the terms of the agreement, Overbrook authorized appellants to offer the property for sale, and if appellants produced a purchaser ready, able and willing to conclude a sale and if a contract was consummated between Overbrook and the purchaser, Overbrook would pay a commission to appellants.
Appellants introduced Feinsilver to defendant-appellee Associated Estates Realty Corporation as a potential purchaser of the property. Through Snider, Overbrook and Associated exchanged information. But they could not agree on a price and negotiations broke down. Several months later, Associated contacted Overbrook, and they negotiated directly with each other. Eventually, they agreed on sale terms. Overbrook transferred the property to Associated and did not pay a commission to appellants.
In their suit, appellants brought a cause of action for breach of contract against Overbrook, as well as causes of action based on unjust enrichment and quantum meruit. They also brought various tort claims against all the appellees. The trial court granted summary judgment in favor of appellees on all of appellants' claims. This appeal followed.
Appellants present three assignments of error for review. In their first assignment of error, they argue that the trial court erred in granting summary judgment in favor of Overbrook on their breach-of-contract claim. We have reviewed the brokerage agreement and we find it to be clear and unambiguous. Consequently, the interpretation of the agreement involves an issue of law, and we need not go beyond the plain language of the agreement or resort to rules of construction to determine the rights and obligations of the parties. Hybud Equip. Corp. v.Sphere Drake Ins. Co., Ltd. (1992), 64 Ohio St.3d 657, 665,597 N.E.2d 1096, 1102; Aultman Hosp. Assn. v. Community Mut. Ins.Co. (1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920, 923;Seringetti Constr. Co. v. Cincinnati (1988), 51 Ohio App.3d 1,4-5, 533 N.E.2d 1371, 1375.
The brokerage agreement gave appellants the right to offer the property for sale for a period of ninety days and to receive a commission if a contract was consummated between Overbrook and a purchaser produced by appellants. The agreement further stated that "[t]he commission described herein shall be payable * * * if the property is conveyed to or contracted by any purchaser or other entities first disclosed to the Seller by Stephen L. Snider for the twelve months immediately following the signing of this agreement."
In this case, the property was not conveyed to Associated until long after the twelve-month period described in the agreement had expired. Consequently, under the plain language of the agreement, appellants were not entitled to a commission, even though they had introduced the buyer and the seller. Kern v. Century 21 Launders Assoc., Inc. (July 21, 1995), Lake App. No. 94-L-102, unreported; Geyer Assoc. Realty, Inc. v. Eschtruth (Mar. 25, 1992), Lorain App. No. 91CA005133, unreported. Appellants' interpretation of the contract renders it internally inconsistent, does not harmonize all of its provisions, and allows for the absurd result that the contract would be illegal as a brokerage contract with no expiration date under former R.C. 4735.18(A)(27). See Hybud Equip., supra, at 666, 597 N.E.2d at 1102; Brannon v.Troutman (1992), 75 Ohio App.3d 233, 237, 598 N.E.2d 1333, 1336;Ottery v. Bland (1987), 42 Ohio App.3d 85, 87, 536 N.E.2d 651,654.
We find no issues of material fact. See Inland Refuse TransferCo. v. Browning-Ferris Industries of Ohio, Inc. (1984), 15 Ohio St.3d 321,322, 474 N.E.2d 271, 273-274; Crowninshield/Old TownCommunity Urban Redev. Corp. v. Campeon Roofing Waterproofing,Inc. (Sept. 18, 1998), Hamilton App. C-970420, unreported. Construing the evidence most strongly in appellants' favor, we hold that reasonable minds could come to but one conclusion — that appellants were not entitled to a commission. Overbrook was entitled to judgment as a matter of law on appellants' breach-of-contract claim, and the trial court did not err in granting summary judgment in its favor. Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46, 47;Crowninshield, supra. Accordingly, we overrule appellants' first assignment of error.
In their second assignment of error, appellants argue that the trial court erred in granting summary judgment in favor of Overbrook on their claims for unjust enrichment and quantum meruit. A party seeking a remedy under a contract cannot also seek equitable relief under a theory of unjust enrichment or quantum meruit, because the terms of the agreement define the parties' relationship in the absence of fraud, bad faith or illegality. Pawlus v. Bartrug (1996), 109 Ohio App.3d 796, 800,673 N.E.2d 188, 191; Weiper v. W.A. Hill Assoc. (1995),104 Ohio App.3d 250, 261-262, 661 N.E.2d 796, 804.
Appellants contend that they are entitled to compensation for services they provided after the expiration of the express agreement. But nothing in the record demonstrates that any of appellants' actions at that time conferred any benefit on Overbrook. Consequently, appellants cannot recover under a theory of unjust enrichment or quantum meruit. Aultman Hosp., supra,
at 55, 544 N.E.2d at 924; Hambleton v. R.G. Barry Corp.
(1984), 12 Ohio St.3d 179, 183, 465 N.E.2d 1298, 1302; Brose v.Bartlemay (Apr. 16, 1997), Hamilton App. No. C-960423, unreported.
Appellants rely on Legros v. Tarr (1989), 44 Ohio St.3d 1,540 N.E.2d 257, in which the Ohio Supreme Court discussed the concept of a "business finder." The court held that while a party to an acquisition normally has no liability to a business finder in the absence of an express or implied-in-fact contract, "an exception exists where the party or its agent misappropriates the finder's proprietary information and uses it to such party's benefit, in which case an agreement to pay may be implied in law and the finder can recover in quantum meruit." Id. at paragraph two of the syllabus.
We find Legros to be distinguishable. In Legros, no contract existed between the plaintiff, the business finder, and the defendant, a third party who had misappropriated information supplied by the plaintiff from a company with whom the plaintiff had contracted. In fact, the plaintiff may have been entitled to a commission under the terms of that contract had the defendant not acted wrongfully. In the present case, an express contract existed between appellants and Overbrook, and that contract expired under its unambiguous terms. Appellants were not entitled to a commission after that expiration date. Their involvement was too remote for them to be considered the procuring cause of the sale, and they cannot use the simple fact that they introduced the buyer and seller to give them a right to compensation in perpetuity. See Kern, supra.
We find no issues of material fact. Construing the evidentiary materials most strongly in appellants' favor, we hold that reasonable minds could reach but one conclusion — that Overbrook did not unfairly benefit from any services provided by appellants, and that appellants were not entitled to compensation under a theory of unjust enrichment or quantum meruit. Therefore, Overbrook was entitled to judgment as a matter of law on those claims, and the trial court did not err in granting its motions for summary judgment. Harless, supra, at 66, 375 N.E.2d at 47;Brose, supra. We overrule appellants' second assignment of error.
In their third assignment of error, appellants state that the trial court erred in granting summary judgment to appellees on their claims for fraudulent conveyance, tortious interference with a business relationship, civil conspiracy and punitive damages. After reviewing the record, we find that this assignment of error is not well taken.
As to the fraudulent-conveyance claim, appellants failed to meet their burden to prove that the transfer of the property from Overbrook to Associated was made "[w]ith actual intent to hinder, delay, or defraud any creditor" as required by R.C. 1336.04(A). The transfer contained none of the "badges of fraud" set forth by the legislature for determining if an inference of fraud exists.Stein v. Brown (1985), 18 Ohio St.3d 305, 308-309,480 N.E.2d 1121, 1124; Fesman v. Berger (Dec. 6, 1995), Hamilton App. No. C-940400, unreported.
"The torts of interference with business relationships and contract rights generally occur when a person, without privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relationship with another, or not to perform a contract with another." A B-AbellElevator Co. v. Columbus/Central Ohio Bldg. Constr. TradesCouncil (1995), 73 Ohio St.3d 1, 14, 651 N.E.2d 1283, 1294. Appellants presented no evidence that Associated, the defendant named in this claim, intentionally interfered in appellants' relationship with Overbrook or that it intentionally procured the breach of any contract between the two. See Kenty v. TransamericaPremium Ins. Co. (1995), 72 Ohio St.3d 415, 419, 650 N.E.2d 863, 866;Sammarco v. Anthem Ins. Companies, Inc. (Nov. 20, 1998), Hamilton App. No. C-971074, unreported. To the contrary, the record demonstrates that Associated took some action to protect appellants' claim to a commission if one was owed under the contract between appellants and Overbrook.
A civil conspiracy is "a malicious combination of two or more persons to injure another in person or property in a way not competent of one alone, resulting in actual damages." Kenty,supra, at 419, 650 N.E.2d at 866. A civil conspiracy claim cannot succeed without an underlying unlawful act. Williams v.Aetna Fin. Co. (1998), 83 Ohio St.3d 464, 475, 700 N.E.2d 859,868. Since all of substantive causes of action on which the conspiracy claim in this case is based are without merit, appellants' conspiracy claim must also fail. Minarik v. Nagy
(1963), 8 Ohio App.2d 194, 195, 193 N.E.2d 280, 281; Brose,supra.
As to appellants' claim for punitive damages, the Ohio Supreme Court has held that "[n]o civil cause of action in this state may be maintained simply for punitive damages." Bishop v. Grdina
(1985), 20 Ohio St.3d 26, 27-28, 485 N.E.2d 704, 705. Since all of appellants' substantive causes of action failed upon their merits, they were not entitled to compensatory damages, and, absent proof of compensatory damages, they were not entitled to an award of punitive damages. Malone v. Courtyard by MariottLtd. Partnership (1996), 74 Ohio St.3d 440, 447,659 N.E.2d 1242, 1248; Cabe v. Lunich (1994), 70 Ohio St.3d 598, 601,640 N.E.2d 159, 162.
We find no issues of material fact. Construing the evidentiary materials most strongly in appellants' favor, we hold that reasonable minds could reach but one conclusion — that appellants failed to prove the essential elements of their various tort claims. Therefore, appellees were entitled to judgment as a matter of law, and the trial court did not err in granting appellees' motions for summary judgment on those claims. Harless,supra, at 66, 375 N.E.2d at 47. Accordingly, we overrule appellants' third assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
Sundermann, P.J., Doan and Gorman, JJ.
Please Note:
The court has placed of record its own entry in this case on the date of the release of this Decision.