# Illinois Official Reports

## Appellate Court

---

### *Steenes v. MAC Property Management, LLC*, 2014 IL App (1st ) 120719

---

| | |
|---|---|
| Appellate Court Caption | ALTHERA STEENES, Plaintiff-Appellant, v. MAC PROPERTY MANAGEMENT, LLC, and 5405-5407 S. WOODLAWN AVE., LLC, Defendants-Appellees. |
| District & No. | First District, Third Division <br> Docket No. 1-12-0719 |
| Filed | July 23, 2014 |
| Held <br> (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The dismissal of a former tenant's action alleging that the nonrefundable "move-in fee" she paid to defendant management company was actually a security deposit or prepaid rent and that the collection of the fee violated the Chicago Residential Landlord and Tenant Ordinance was affirmed on appeal, since the amount of the move-in fee was inadequate to be considered as security for the nonpayment of rent or performance of the terms of the lease, the lease provision as to the security deposit did not mention the move-in fee, the case law supported the conclusion that the move-in fee was a one-time nonrefundable charge related to plaintiff's move into the apartment, and the fee did not fall within the definition of rent set forth in the ordinance. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-M1-101010; the Hon. Rita M. Novak, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Berton N. Ring, P.C., of Chicago (Berton N. Ring, of counsel), for appellant. |
|---|---|
| | Cassiday Schade LLP, of Chicago (Joseph A. Giannelli and Lindsay Drecoll Brown, of counsel), for appellees. |

| Panel | JUSTICE PUCINSKI delivered the judgment of the court, with opinion. Presiding Justice Hyman and Justice Mason concurred in the judgment and opinion. |
|---|---|

**OPINION**

¶ 1     Plaintiff, Althera Steenes, a former tenant of a building managed by defendant, MAC Property Management, LLC (MAC), and owned by defendant, 5405-5407 S. Woodlawn Ave., LLC (Woodlawn), filed this action seeking redress for defendants' alleged violations of the City of Chicago Residential Landlord and Tenant Ordinance (RLTO) (Chicago Municipal Code § 5-12-010 *et seq.* (amended Mar. 31, 2004)). The dispute relates to defendants' collection and treatment of a nonrefundable "move in" fee which, plaintiff contends, must be considered a security deposit or prepaid rent under the RLTO. Plaintiff appeals from an order granting defendants' motion to dismiss, with prejudice, under section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2010)) as to certain counts of her amended complaint. We affirm.

¶ 2     In January 2010, plaintiff filed her initial five-count complaint against defendants in the municipal division of the circuit court of Cook County (municipal division) alleging causes of action for: (1) violations of section 5-12-080 of the RLTO; (2) breach of fiduciary duty; (3) failure to maintain; (4) breach of implied warranty of habitability; and (5) negligence. In response to defendants' motion to dismiss, plaintiff sought leave to file an amended complaint, which was granted.

¶ 3     Thereafter, plaintiff's first-amended class action complaint (amended complaint) was filed on April 7, 2010. Pursuant to plaintiff's motion to transfer and, based on the newly asserted class claims, the case was transferred to the chancery division of the circuit court of Cook County.

¶ 4     The amended complaint sets forth the following allegations. Plaintiff entered into a written one-year lease (lease) with defendants for apartment 1A of a 25-unit building located at 5405 S. Woodlawn Avenue in Chicago (the building) on March 25, 2008. The building was not owner occupied. The lease period was to run from March 29, 2008, to March 28, 2009, with a monthly rent of $715. The lease included a paragraph which stated: "Lessee has deposited with Lessor the security deposit *** to be retained by Lessor to ensure that Lessee shall fully perform each and every obligation provided in the lease." However, the lease did not provide

an amount for the security deposit. Plaintiff does not allege she paid a security deposit. An addendum to the lease also signed by plaintiff on March 25, 2008, gave plaintiff a concession for rent covering April and May 2008, in the total amount of $1,400 (concession addendum) and became void if the lease was not fulfilled. Plaintiff moved out of the building before the lease terminated in January 2009.

¶ 5 During the application process, plaintiff received a document entitled, "Welcome to MAC Property Management" (welcome statement) and provided "Move In Information." The welcome statement listed nonrefundable fees, including an application fee of $50 and a "Move-in Fee" of $350 (move-in fee), which was to be paid by March 20, 2008, five days before plaintiff signed the lease. Plaintiff timely paid the move-in fee. The welcome statement listed plaintiff's move-in date as April 1, 2008, and stated plaintiff's first rent payment would not be due until June 1 based on the concession addendum. The welcome statement indicated that plaintiff's rental of the apartment was dependent on documentation of her income and approval of her application.

¶ 6 As to the move-in fee, plaintiff contended she did not receive consideration from defendants in exchange for the move-in fee; the move-in fee was "a fictitious or illusory fee for the purpose of enriching Defendants at the tenant's expense" and "was a disguised security deposit or prepaid rent" and subject to the RLTO provisions regulating such items. As to the class, plaintiff alleged that beginning in 2007, MAC began imposing a move-in fee for all units under its management within the city of Chicago (alleged to be more than 3,000 units) where the lease contained no security deposit.

¶ 7 The lease, concession addendum, and welcome statement were attached to the amended complaint as exhibits.

¶ 8 The amended complaint included six causes of action.[1] Counts I through III were brought on behalf of a class against MAC only. In count I, plaintiff alleged MAC: commingled and held the move-in fee for more than 6 months without paying interest; failed to return the move-in fee within 45 days of termination of the tenancy; and failed to notify plaintiff of deductions within 30 days in violation of sections 5-2-080(c) and (d) of the RLTO, which govern security deposits. Chicago Municipal Code § 5-2-080(c), (d) (amended July 28, 2010). Count II was pled "in the alternative to count I" and alleged MAC's conduct, as to the move-in fee, was deceptive and unfair for failing to reveal the move-in fee was actually a security deposit or unpaid rent in order to avoid the provisions of the RLTO and, therefore, violated the Illinois Consumer Fraud Act and Deceptive Business Practices Act (the Act) (815 ILCS 505/2 (West 2008)). In count III, plaintiff contended MAC, by disguising plaintiff's security deposit or prepaid rent as a move-in fee, caused her to waive her rights under the RLTO as to security deposits or prepaid rents and, thus, the lease violated section 5-12-140 of the RLTO (Chicago Municipal Code § 5-12-140 (amended Nov. 6, 1991)). Counts IV, V, and VI were individual counts brought against both defendants. In count V, plaintiff alleged a breach of implied warranty of habitability. In counts IV and VI, plaintiff sought damages for an injury she suffered because defendants did not properly install the kitchen cabinets in her apartment.

¶ 9 Defendants filed their answers to the individual counts IV and VI of the amended complaint and moved to dismiss the remaining counts pursuant to section 2-615, and to strike

---

[1]Plaintiff misnumbered certain counts of her amended complaint. We refer to the counts in correct numerical order.

plaintiff's class allegations. In their motion to dismiss, defendants argued, in part, the move-in fee was neither a security deposit nor prepaid rent and, therefore, plaintiff failed to sufficiently allege violations of the RLTO and the Act.

¶ 10    Plaintiff then filed a motion for leave to file a second-amended complaint and attached the proposed pleading (proposed second-amended complaint). Plaintiff, in her motion, stated generally, the proposed second-amended complaint would "cure the purported defects" raised in the motion to dismiss. The proposed second-amended complaint included allegations as to a second class of plaintiffs and added an action for restitution against both defendants on behalf of a class based on the move-in fee. The proposed second-amended complaint also added three paragraphs, which were each labeled: "HYPOTHETICAL SET OF FACTS," in an attempt to support plaintiff's claim that the move-in fee was actually a security deposit.

¶ 11    On September 29, 2010, in a written order, the circuit court denied plaintiff's motion for leave to file the proposed second-amended complaint "for the reasons stated in open court." The record does not include a report of the proceedings from that date. In the same order, the circuit court set a briefing schedule on defendants' motion to dismiss.

¶ 12    After briefing and a hearing, the circuit court granted the motion to dismiss, with prejudice, with respect to counts I through III of the amended complaint (class counts alleging violations of the RLTO and the Act), and dismissed count IV (individual count alleging breach of implied warranty of habitability) with leave to replead. In dismissing counts I through III, the circuit court found the RLTO did not prohibit the imposition of a move-in fee and the amended complaint failed to include factual allegations to support a conclusion the move-in fee was actually prepaid rent or a security deposit. The court also found the amended complaint lacked a factual basis for plaintiff's conclusion that defendants were attempting to "skirt or get around" the provisions of the RLTO regulating security deposits and prepaid rents by imposing the move-in fee. The circuit court subsequently struck the class allegations of the amended complaint. Plaintiff chose not to replead count IV and the circuit court entered an order stating plaintiff elected not to amend, and count IV remained stricken.

¶ 13    Subsequently, because the class allegations had been stricken, the case was transferred to the municipal division and referred to mandatory arbitration. After a mandatory arbitration hearing, a panel of arbitrators found in favor of defendants on the failure to maintain and negligence counts. Plaintiff did not file a notice of rejection of the arbitration award; judgment on the award in favor of defendants was entered on December 19, 2011. Plaintiff then appealed.

¶ 14    On appeal, plaintiff has not argued for reversal of the order striking her class allegations; the judgment entered in defendants' favor on the individual failure to maintain and negligence counts; or the dismissal of the breach of implied warranty of habitability claim. Any issues as to these orders are forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013).

¶ 15    Plaintiff does argue the dismissal, with prejudice, of her claims for violations of the RLTO and the Act in her amended complaint was in error because the move-in fee must be considered either prepaid rent or a security deposit and, for this reason, defendants' collection and treatment of the move-in fee violated the RLTO and, therefore, was deceptive under the Act. Plaintiff also argues the circuit court erred in dismissing, with prejudice, her causes of action and denying her leave to file the proposed second-amended complaint. We affirm.

¶ 16    A motion to dismiss pursuant to section 2-615 of the Code attacks the legal and factual sufficiency of the complaint. *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 22. "The

reviewing court should interpret the assertions of the complaint in the light most favorable to the plaintiff by accepting as true all well-pleaded facts and the reasonable inferences that can be drawn from them." *Gagnon v. Schickel*, 2012 IL App (1st) 120645, ¶ 18. "Mere conclusions of law or facts unsupported by specific factual allegations in a complaint are insufficient to withstand a section 2-615 motion to dismiss." *Ranjha v. BJBP Properties, Inc.*, 2013 IL App (1st) 122155, ¶ 9. "An exhibit attached to a complaint becomes part of the pleading for every purpose, including the decision on a motion to dismiss. [Citations.] Where an exhibit contradicts the allegations in a complaint, the exhibit controls. [Citation.]" *Gagnon*, 2012 IL App (1st) 120645, ¶ 18. Our review of a dismissal under section 2-615 is *de novo*. *Performance Electric, Inc. v. CIB Bank*, 371 Ill. App. 3d 1037, 1039 (2007).

¶ 17      Our consideration of the circuit court's dismissal order requires us to construe provisions of the RLTO and interpret the terms of the lease. The rules for construing municipal ordinances are those which apply to the construction of statutes. *In re Application of the County Collector of Kane County*, 132 Ill. 2d 64, 72 (1989).

> "As in all cases of statutory construction, our primary objective is to give effect to the intent of the legislature. The most reliable indicator of such intent is the language of the [statute], which must be given its plain and ordinary meaning. [Citation.] When the statutory language is clear and unambiguous, we will give it effect without resort to extrinsic aids for construction. [Citation.]" *In re Shelby R.*, 2013 IL 114994, ¶ 32.

We review issues of statutory interpretation *de novo*. *Lawrence v. Regent Realty Group, Inc.*, 197 Ill. 2d 1, 9 (2001).

¶ 18      "[A] lease is a contract between landlord and tenant, and the rules of contract construction apply to the construction of leases." *Fuller Family Holdings, LLC v. Northern Trust Co.*, 371 Ill. App. 3d 605, 620 (2007). "Where the terms of a contract are clear and unambiguous, they must be given effect as written, and under those circumstances, the meaning of the contract is a question of law." *Id.*

¶ 19      We first consider whether the move-in fee should be considered a security deposit under the RLTO. The RLTO has the stated purpose "to establish the rights and obligations of the landlord and the tenant in the rental of dwelling units, and to encourage the landlord and the tenant to maintain and improve the quality of housing" located within the city of Chicago. Chicago Municipal Code § 5-12-010 (amended Mar. 31, 2004). The RLTO was enacted in part to "help protect the rights of tenants with respect to their security deposits." *Lawrence*, 197 Ill. 2d at 10. Section 5-12-080 of the RLTO requires the landlord to hold a security deposit in a separate account, and asserts that a security deposit continues to be the property of the tenant. Chicago Municipal Code § 5-12-080 (amended July 28, 2010). The landlord, under certain circumstances set forth in section 5-12-080 of the RLTO, must pay interest on the security deposit and return it to the tenant after making proper deductions for unpaid rent and repairs. *Id. Lawrence*, 197 Ill. 2d at 10.

¶ 20      The RLTO does not define the term "security deposit." Therefore, we may look to the ordinary and popularly understood meaning given to the term "security deposit" (see *Alvarez v. Pappas*, 229 Ill. 2d 217, 228 (2008)) and, in that regard, we may consult a dictionary. See *Relf v. Shatayeva*, 2013 IL 114925, ¶ 32. We may also consider the "reason behind and the necessity for the ordinance." *VG Marina Management Corp. v. Wiener*, 378 Ill. App. 3d 887, 890 (2008).

¶ 21      We have previously described a security deposit as:

- 5 -

> "[M]oney a tenant deposits with a landlord as security for the tenant's full and faithful performance of the lease terms. [Citation.] Under the terms of a lease agreement, a security deposit remains the tenant's property which the landlord holds in 'trust' for the tenant's benefit subject to the tenant fulfilling its obligations under the lease." *Starr v. Gay*, 354 Ill. App. 3d 610, 613 (2004).

Similarly, the Illinois Security Deposit Return Act (765 ILCS 710/1 (West 2008)) and the Illinois Security Deposit Interest Act (765 ILCS 715/1 (West 2008)) both describe a security deposit as monies deposited from a lessee to secure the payment of rent or for compensation for damage to property. Additionally, "security" is defined as "something given, deposited, or pledged to make certain the fulfillment of an obligation (as the payment of a debt)." Webster's Third New International Dictionary 2053-54 (1976). A "deposit" is defined as: "Money placed with a person as earnest money or security for the performance of a contract." Black's Law Dictionary 450 (7th ed. 1999). In contrast, a "fee" is defined as "[a] charge for labor or services, esp[ecially] professional services." Black's Law Dictionary 629 (7th ed. 1999).

¶ 22    Plaintiff argues the move-in fee must be a security deposit because there was no security deposit amount listed in the lease, but the lease had a provision stating a security deposit had been made, and because the move-in fee was illusory and without consideration. Plaintiff's arguments and the general conclusory allegations of the amended complaint are insufficient to state her claim under the RLTO that the move-in fee was a security deposit.

¶ 23    According to the welcome statement, the move-in fee was to be paid by March 20, 2008, 5 days before the lease was executed and more than 10 days before the move-in date of April 1, 2008. The welcome statement described the move-in fee as nonrefundable. The move-in fee was in the amount of $350, an amount which is less than one-half of the monthly rent of $715. Our consideration of the plain language of the welcome statement leads to a conclusion that the move-in fee was a "charge" made in return for plaintiff's moving into her unit, which would cover defendants' resulting expense, time, and the interruption of business related to the move. We reach this conclusion for several reasons. First, the amount of the move-in fee appears inadequate to be considered as security for any nonpayment of monthly rent or to secure the "tenant's *full* and faithful performance of the lease terms." (Emphasis added.) *Starr*, 354 Ill. App. 3d at 613. Further, it cannot be considered as a surety for either unpaid rent or compensation for damage to the apartment in that the move-in fee was explicitly made nonrefundable in the welcome statement. The welcome statement does not indicate, in any way, the move-in fee was given as security to guarantee plaintiff's performance under the lease and to be held in trust by the landlord. The move-in fee, under these circumstances, has none of the earmarks of a security deposit.

¶ 24    We also reject plaintiff's argument that the security deposit provision in the lease supports a conclusion that the move-in fee was a security deposit. The lease, a preprinted form, contained a standard provision as to security deposits which said a security deposit had been made to ensure the tenant's full performance under the lease. However, this provision made no reference to the welcome statement, the move-in fee, or any security deposit amount. We cannot read the lease as meaning the move-in fee described in the welcome statement was a security deposit.

¶ 25    Both sides have cited out-of-state cases in their briefs in support of their positions. This foreign case law interprets landlord-tenant statutes with similar purposes as the RLTO. Although not controlling authority, "decisions of other states construing similar laws are

entitled to respect and consideration." (Internal quotation marks omitted.) *Urban v. Loham*, 227 Ill. App. 3d 772, 776 (1992).

¶ 26    First, plaintiff cites *Pool v. Insignia Residential Group*, 736 N.E.2d 507 (Ohio Ct. App. 1999), and *Perrone v. Mid-America Financial Investment Corp.*, No. A-03-177, 2004 WL 2032935 (Neb. Ct. App. Sept. 14, 2004). *Perrone*, however, was not designated for permanent publication and is not to be cited. We, therefore, will not consider *Perrone* further.

¶ 27    In *Pool*, the tenant paid both a security deposit and a pet deposit under the provisions of the lease; a portion of the pet deposit was refundable and a part was nonrefundable. *Pool*, 736 N.E.2d at 508. The lease provided that any damages incurred to the apartment over the amount of the pet deposit would be charged to the tenant. *Id*. Additionally, the tenant paid rent that included $30 per month for having pets in the apartment. *Id*. Plaintiff filed a class action against the landlord seeking a refund of the monthly pet fee and the nonrefundable pet deposit on a theory that these payments were security deposits. *Id*. at 509. The provision of the Ohio Landlord-Tenant Act at issue (Ohio Rev. Code Ann. § 5321.05 (Baldwin 1999)) defined a security deposit as "any deposit of money or property to secure performance by the tenant under a rental agreement." (Internal quotation marks omitted.) *Id*. at 510. The Ohio Court of Appeals found the $30 monthly fee paid as part of the rent was not a security deposit because this payment, under the language of the lease, was intended as additional rent. *Id*. After looking at the language of the lease provision pertaining to the pet deposit, the court held that where the nonrefundable pet deposit was given to secure performance by the tenant under the lease, it may be considered a security deposit under the Ohio statute. *Id*.

¶ 28    In this case, the lease provision as to a security deposit did not refer to the move-in fee, and there was nothing in the lease referring to the move-in fee. The welcome statement did not include any language that could be interpreted to mean the move-in fee was made to secure performance of the lease by plaintiff. Thus, *Pool* does not support plaintiff's argument.

¶ 29    Furthermore, defendants contend that Ohio cases decided after *Pool* have found certain nonrefundable fees not to be security deposits under the applicable landlord-tenant statute, including: *Kopp v. Associated Estates Realty Corp.*, No. 09AP-719, 2010 WL 1510196 (Ohio Ct. App. Apr. 15, 2010), and *Stauffer v. TGM Camelot, Inc.*, No. CA2005-12-508, 2006 WL 1974612 (Ohio Ct. App. July 17, 2006). In *Stauffer*, the Ohio appellate court found a "one-time, nonrefundable fee given as consideration for the right to keep a pet in the apartment" was not a security deposit. *Id*. at *4.

¶ 30    The tenant in *Kopp* paid a nonrefundable redecorating fee ($75) and a nonrefundable pet fee ($300). *Kopp*, 2010 WL 1510196, at *1. Additionally, the landlord required a security deposit, but also gave the tenant the option of purchasing a security deposit bond from a third person instead. *Id*. The tenant brought suit against the landlord alleging the nonrefundable fees and the purchase price of the bond were security deposits and must be returned. *Id*. The Ohio Court of Appeals made certain findings relevant to the issues before us. First, the court found the tenant freely chose to purchase the bond rather than pay the higher security deposit amount and such a practice did not violate the landlord-tenant statute. *Id*. at *4. Second, the bond's purchase price was paid to the issuer of the bond and was not held by the landlord and, therefore, was not a security deposit. *Id*. Third, the court found the redecorating fee was not a security deposit as it did not secure the tenant's performance. *Id*. at *5. The redecorating fee "was listed on the lease as an upfront, nonrefundable fee for preparing the apartment 'prior' to [the tenant] taking possession." *Id*. Fourth, the court reached the same conclusion as to the pet

- 7 -

fee, finding it did not secure performance or apply to any damages, but was paid to keep pets in the apartment. *Id*. at *6.

¶ 31    We agree with defendants that *Kopp* and *Stauffer* make clear that nonrefundable fees are not contrary to the Ohio Landlord-Tenant Act and, where the lease indicates such fees are not sought to secure a tenant's performance, they are not considered security deposits. These cases support our conclusion the move-in fee, a one-time upfront charge relating to plaintiff's move into her apartment, which plaintiff paid with full knowledge that it was nonrefundable, was not a security deposit.

¶ 32    Defendants, in turn, cite *Stutelberg v. Practical Management Co.*, 245 N.W.2d 737 (Mich. Ct. App. 1976) (*per curiam*), in support of their position that the move-in fee is not a security deposit. The tenant class in *Stutelberg* claimed nonrefundable fees for carpet cleaning, drapery cleaning, and janitorial services were security deposits. *Id*. at 738. The applicable Michigan landlord-tenant act defined a security deposit as "a deposit, in any amount, paid by the tenant to the landlord or his agent to be held for the term of the rental agreement *** returnable to the tenant on condition of return of the rental unit by the tenant in condition as required by the rental agreement." (Internal quotation marks omitted.) *Id*. at 741. The Michigan appellate court found the landlord-tenant act was "not directed towards contractual provisions where the landlord and tenant agree the payment was not refundable." *Id*. at 743. Because the agreed nonrefundable fees at issue in *Stutelberg* were not made to assure performance by the tenant, the fees were found not to be security deposits. *Id*. at 745. The Michigan appellate court also found the fees were not deceptive, as they were "openly contracted" by the parties. The Michigan appellate court, in reaching its decision, stated the purpose of the provisions of the landlord-tenant act as to security deposits is to prevent landlords from "surreptitiously usurping substantial sums held to secure the performance of conditions under the lease." *Id*. at 744. The Michigan appellate court also found a tenant would have no expectation that the nonrefundable fees at issue were to be held by the landlord and returned to him or her at the end of the lease. *Id*.

¶ 33    The reasoning of *Stutelberg* is persuasive here. Plaintiff agreed to pay the move-in fee with full knowledge that it was nonrefundable. The lease and welcome statement nowhere provided that the move-in fee was part of any security deposit that must be held in trust by defendants and returned to plaintiff upon full performance of the lease.

¶ 34    We now consider whether the move-in fee falls within the provisions of the RLTO governing prepaid rent. The RLTO defines "rent" as "any consideration, including any payment, bonus, benefits or gratuity, demanded or received by a landlord for or in connection with the use or occupancy of a dwelling unit." Chicago Municipal Code § 5-12-030(f) (amended May 12, 2010). Plaintiff did not allege specific facts to support her conclusion that the move-in fee is actually prepaid rent. Plaintiff, however, argues because she received no consideration for the move-in fee and the definition of "rent" in the RLTO is broadly written, as it includes the word "any," the move-in fee must be considered prepaid rent.

¶ 35    We must construe the statutory provision defining rent in its entirety, and "words and phrases should not be construed in isolation." *Carver v. Sheriff of La Salle County*, 203 Ill. 2d 497, 507-08 (2003). The RLTO definition of "rent" does include the word "any," but it also states "any" consideration or "any" payment made to the landlord must be made "for or in connection with the use or occupancy of a dwelling unit" to be considered rent. Chicago Municipal Code § 5-12-030(f) (amended May 12, 2010). A one-time nonrefundable fee for

moving into the unit is not "any" payment made in connection with plaintiff's use or occupancy of the unit and does not fall within the RLTO's unambiguous definition of rent.

¶ 36    For these reasons, we find the move-in fee was neither a security deposit nor prepaid rent under the RLTO. Because plaintiff's claim under the Act depended upon a finding that the move-in fee was a disguised payment of either a security deposit or prepaid rent, we also find plaintiff failed to state a cause of action for violation of that statute. Therefore, the circuit court properly dismissed, with prejudice, counts I, II, and III of the amended complaint for failure to state causes of action.

¶ 37    Finally, we consider plaintiff's argument that the circuit court erred in denying her leave to file her proposed second-amended complaint and dismissing, with prejudice, counts I, II, and III.

¶ 38    Although "Illinois has a liberal policy of allowing the amendment of pleadings, this right is not unlimited." *RBS Citizens, National Ass'n v. RTG-Oak Lawn, LLC*, 407 Ill. App. 3d 183, 192 (2011). The decision whether to grant leave to file an amended complaint is within the sound discretion of the circuit court. *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 272-73 (1992). In exercising its discretion, the circuit court should consider whether (1) the proposed amendment would cure the defects in the original pleading; (2) the amendment would surprise or prejudice other parties; (3) the proposed amendment is timely; and (4) previous opportunities to amend the pleading can be identified. *Id*. at 273.

¶ 39    After a hearing on the plaintiff's motion for leave to file the proposed second-amended complaint, the circuit court denied the motion. In its order, the circuit court stated the motion had been denied for "the reasons stated in open court." Plaintiff now seeks reversal of that decision.

¶ 40    Defendants assert that we are without jurisdiction to review this order as it was not included in the notice of appeal. Plaintiff, in her notice of appeal, specified she was appealing two orders: (1) the March 4, 2011, order dismissing counts I through IV of her amended complaint; and (2) the order of April 27, 2011, striking her class allegations. Although the order denying plaintiff leave to file her proposed second-amended complaint was not listed in her notice of appeal, we find this order preceded and procedurally led to the March 4, 2011, dismissal, with prejudice, of counts I, II, and III. We, therefore, have jurisdiction to review plaintiff's claim of error as to that order. *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 23 (where supreme court held that a notice of appeal will "confer jurisdiction even if the order was 'a "step in the procedural progression leading" ' to the judgment which was specified in the notice of appeal" (quoting *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 435 (1979))).

¶ 41    Plaintiff failed to include in the record on appeal a transcript from the hearing relating to her motion seeking leave to file the proposed second-amended complaint. She also failed to submit a bystander's report or an agreed statement of facts as to that proceeding under Illinois Supreme Court Rule 323(c), (d) (eff. Dec. 13, 2005). As appellant, plaintiff had "the burden of presenting a sufficiently complete record of the proceedings to support a claim of error." *Midstate Siding & Window Co. v. Rogers*, 204 Ill. 2d 314, 319 (2003) (citing *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984)). In the absence of a complete record, a reviewing court presumes an order entered by the trial court was in conformity with the law and had a sufficient factual basis. *Foutch*, 99 Ill. 2d at 392. "In fact, when the record on appeal is incomplete, a reviewing court should actually 'indulge in every reasonable presumption favorable to the judgment from which the appeal is taken, including that the trial court ruled or

acted correctly.' " *Smolinski v. Vojta*, 363 Ill. App. 3d 752, 757-58 (2006) (quoting *People v. Majer*, 131 Ill. App. 3d 80, 84 (1985)).

¶ 42    We do not have a record of the issues that were addressed or the arguments that were presented or considered by the circuit court during the hearing on plaintiff's motion for leave to file the proposed second-amended complaint. More significantly, we do not have a record of the reasons given by the circuit court for the denial of leave to file the proposed second-amended complaint. In the absence of a complete record, we will presume the order of the circuit court, which denied plaintiff leave to file the proposed second-amended complaint, was proper.

¶ 43    Because the move-in fee was neither a security deposit nor prepaid rent, we find the circuit court did not err in dismissing, with prejudice, counts I, II, and III.

¶ 44    Affirmed.